**Marcus BRADFORD, individually and on behalf of himself and others similarly situated, Plaintiffs,**

v.

**Barbara BLUM, as Commissioner of the New York State Department of Social Services and William J. Eagen, Jr., individually and as Commissioner of the Dutchess County Department of Social Services, Defendants.**

No. 77 Civ. 1877 (JMC).

United States District Court,
S. D. New York.

Jan. 23, 1981.

Mid-Hudson Legal Services, Inc., Pough-keepsie, N. Y., and Teitelbaum & Hiller, P. C., New York City (Herbert Teitelbaum and Richard O. Berner, New York City, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen., New York City (Judith A. Gordon and Robert A. Feuerstein, Asst. Attys. Gen., New York City, of counsel), for defendants.

CANNELLA, District Judge:

Plaintiffs' motion for attorneys' fees, costs and disbursements is granted in the amount of $76,418.33. 42 U.S.C. § 1988; 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d).

## FACTS

Plaintiffs commenced this class action under 42 U.S.C. § 1983 seeking to enjoin defendants from enforcing, and to declare unconstitutional, certain amendments to the New York State Department of Social Service Regulations, 18 N.Y.C.R.R. § 358.8(c)(1) (promulgated February 15, 1977), which excluded childless and employable recipients of Home Relief assistance from further payments prior to a hearing. On April 19, 1977, by order to show cause, plaintiffs moved for a temporary restraining order and a preliminary injunction. The Court issued the temporary restraining order on that date, and on April 22, 1977 conducted a hearing on plaintiffs' motion for a preliminary injunction.[1] On May 3, 1977, the Court granted plaintiffs' motion, finding that section 358.8, as amended, was

> violative of the procedural due process requirements enunciated by the Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), in that it allows termination of Home Relief benefits prior to a fair hearing where issues of fact and judgment may be in controversy.

*Hurley v. Toia*, 432 F.Supp. 1170, 1178 (S.D. N.Y.), aff'd mem., 573 F.2d 1291 (2d Cir. 1977). On the same date, the Court determined that the suit was properly maintainable as a class action, and granted plaintiffs' motion for class certification.

Defendants appealed the Court's May 3, 1977 decision to the Court of Appeals for the Second Circuit and, while the appeal was pending, plaintiffs' attorneys moved to intervene three more named plaintiffs and to expand the size of the class. Because of the pendency of the appeal, the Court denied this motion on June 17, 1977. Plaintiffs then moved before the Court of Appeals to remand the matter to this Court so that plaintiffs' latest motion could be considered. On June 27, 1977, the Second Circuit remanded the case to this Court and, on July 8, 1977, the Court granted the motion to intervene, expanded the size of the class, and broadened the scope of the preliminary injunction accordingly. Also on July 8, 1977, the Court denied defendants' motion for a stay of the preliminary injunction

---

1. Also on April 22, 1977, Marcus Bradford moved by order to show cause to intervene as a named plaintiff. The Court granted the motion, and signed an order temporarily restraining enforcement of section 358.8 against him.

pending appeal. On October 19, 1977, the Court's decision of May 3, 1977 was affirmed. *Hurley v. Toia*, 573 F.2d 1291 (2d Cir. 1977).

The parties then commenced trial preparation that was to last more than one year. Both sides conducted extensive discovery and plaintiffs at one point moved to compel answers to certain interrogatories. On May 10, 1978, Magistrate Sinclair, while denying plaintiffs' motion to compel, stated that defendants' "bald assertions of burdensomeness and unavailability of data are not particularly persuasive," and established a mechanism by which plaintiff could obtain the information requested. Memorandum Order at 2 (filed May 10, 1978). In July 1978, the parties entered into settlement negotiations and, on January 16, 1979, executed a stipulation of settlement, which the Court approved on March 7, 1980. At that time, the Court stated that the settlement "essentially provides the plaintiff class with the very relief sought in the complaint in

this action."[2] Memorandum and Order at 2, 77 Civ. 1877 (S.D.N.Y. Mar. 7, 1980).

On April 8, 1980, plaintiffs filed a motion for an award of attorneys' fees, costs and disbursements. The Court conducted an evidentiary hearing on September 8, 1980, at which the six attorneys who represented plaintiffs until the approval of settlement, all of whom were employed by Mid-Hudson Legal Services, Inc. ["Mid-Hudson"] when they rendered these services,[3] testified. Plaintiffs' attorneys on the fee application, Herbert Teitelbaum and Richard O. Berner of Teitelbaum & Hiller, P.C. ["T&H"], also testified at the hearing.[4]

Defendants oppose the award of attorneys' fees on several grounds: (1) plaintiffs cannot be considered prevailing parties under section 1988 as to the entire award sought; (2) the time records of the Mid-Hudson attorneys are defective because they were not contemporaneously kept or adequately reconstructed; (3) the hours

---

**2.** The stipulation of settlement, in pertinent part, provides that

3. defendant Blum, in her capacity as Commissioner of the New York State Department of Social Services, will act as expeditiously as possible to amend the regulation set out at 18 N.Y.C.R.R. § 358.8(c)(1) to delete the provisions added to that regulation in the amendment promulgated February 15, 1977 (hereafter the "HR hearing restriction"), and will continue to comply with the terms of the orders of this Court dated May 3, 1977 and July 8, 1977 until the effective date of the amendment to be promulgated as described herein;

4. defendant Blum, in her capacity as Commissioner of the New York State Department of Social Services, "agrees not to re-implement the HR hearing restriction by regulation in the future and not to implement any substantially identical regulation in the future, but provided further that nothing herein shall prohibit defendant Blum in her capacity as Commissioner of the New York State Department of Social Services from otherwise complying with a state statute expressly mandating a similar HR hearing restriction, and provided further that nothing herein shall prohibit the plaintiff from challenging the legality or constitutionality of such a statute, and provided further that the rights of the parties to seek relief from the effect of this stipulation under Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure, in accordance with established judicial standards

shall be preserved, and provided further that should a federal statute or regulation mandate a similar HR hearing restriction or should federal case law change so as to expressly permit such a restriction, the rights of the parties to seek such relief shall be likewise preserved . . . .

Stipulation of Settlement (dated Jan. 16, 1979) (filed as Exhibit 2 to Notice of Motion (filed May 14, 1979)).

**3.** Mid-Hudson is a not-for-profit corporation created in 1977 providing free legal assistance, in civil matters only, to indigent persons in the upstate New York Counties of Columbia, Dutchess, Greene, Orange, Sullivan and Ulster. No money received by Mid-Hudson pursuant to an award of attorneys' fees in a civil rights action such as the case at bar will accrue to the benefit of any individual attorney employed at Mid-Hudson. Affidavit of John D. Gorman ¶¶ 1, 3, 6 (filed Apr. 8, 1980) ["Gorman Affidavit"].

**4.** Although the Court strongly disapproves of attorneys testifying at a proceeding in which they are representing one of the parties, the Court permitted Teitelbaum and Berner to give testimony herein, because they are also seeking attorneys' fees and because they were subpoenaed by the state to testify. The Court also did not wish to delay the proceedings any further. *Hurley v. Blum*, Transcript of Hearing at 87–88 (Sept. 8, 1980).

claimed by the Mid-Hudson attorneys are duplicative, excessive and unwarranted; (4) the hours claimed by the T&H attorneys are not compensable because these attorneys performed legal services under a contingent fee arrangement between T&H and Mid-Hudson, and because they are duplicative, excessive and unwarranted; and (5) the rates of compensation requested by plaintiffs' attorneys exceed the reasonable value of their services.

## DISCUSSION

*Prevailing Party*

■ Section 2 of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 ["section 1988"], provides in pertinent part: "In any action or proceeding to enforce a provision of [section] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The Supreme Court recently removed any remaining doubt as to whether, for purposes of this section, there is a prevailing party in a class action disposed of by settlement, stating:

> The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No. 94–1011, p. 5 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908.

*Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). Defendants argue, however, that plaintiffs cannot be considered prevailing parties as to the entire award sought because they did not prevail in every aspect of the litigation. Thus, defendants claim that plaintiffs' attorneys, at best, are entitled to an award only for those hours reasonably expended "on issues on which plaintiff[s] in fact prevailed or which were necessary to [their] obtaining that status." Defendants' Post-Hearing Memorandum of Law at 6 (filed Sept. 22, 1980) ["Defendants' Memo"]. Defendants point specifically to three aspects of the litigation in which they claim plaintiffs were unsuccessful: (1) plaintiffs' application for a class-wide temporary restraining order, brought on by order to show cause on April 19, 1977; (2) plaintiffs' motion in June 1977 to permit the intervention of three new named plaintiffs, to amend the prior class certification, and to expand the scope of the previously-granted preliminary injunction accordingly, prior to obtaining a remand from the Second Circuit on June 27, 1977; and (3) plaintiffs' motion to compel discovery before Magistrate Sinclair in May 1978.

For two reasons, the Court does not agree with defendants' interpretation of the phrase "prevailing party." *First,* the Court believes that Congress did not intend to fragment the definition of the term in the manner suggested by defendants. There is no question that in the normal course of litigation, especially complex and vigorously contested litigation such as that currently before the Court, each side will win some procedural skirmishes and lose others. Here, plaintiffs concede they did not emerge victorious in every dispute that arose during three years of litigation. But plaintiffs correctly state that they ultimately prevailed on the case as a whole, a fact acknowledged by the Court in its Memorandum and Order of March 7, 1980, approving the stipulation of settlement; indeed, the results obtained for the class were precisely those sought in the complaint. The Court agrees with plaintiffs that "[q]uite simply, a plaintiff prevails if by means of his litigation he obtains from the defendant the relief he is seeking, whether or not his counsel is successful on all motions." Plaintiffs' Reply Memorandum of Law at 6 (filed Oct. 8, 1980) ["Plaintiffs' Memo"].

The Court finds the reasoning of the Sixth Circuit particularly persuasive:

> The question as to whether the plaintiffs have prevailed is a preliminary determi-

nation, necessary before the statute comes into play at all. Once that issue is determined in the plaintiffs' favor, they are entitled to recover attorneys' fees for "all time reasonably spent on a matter." The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. *So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith.* There are numerous practical reasons why a court may not be permitted to dissect a lawsuit into "issues and parts of issues as to which the plaintiffs did not prevail," especially by decimating the total hours claimed with arbitrary percentages. Suffice it to say, however, that Congress has mandated that a prevailing party's attorney should be compensated "as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." We know of no "traditional" method of billing whereby an attorney offers a discount based upon his or her failure to prevail on "issues or parts of issues." Furthermore, it would hardly further our mandate to use the "broadest and most flexible remedies available" to us to enforce the civil rights laws if we were so directly to discourage innovative and vigorous lawyering in a changing area of the law. That mandate is best served by encouraging attorneys to take the most advantageous position on their clients' behalf that is possible in good faith.

*Northcross v. Board of Education*, 611 F.2d 624, 636 (6th Cir. 1979) (emphasis added), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). In light of the Court's familiarity with the proceedings in this case as well as the testimony adduced at the fee application hearing, the Court finds that plaintiffs' counsel acted at all times in good faith and that on no occasion did they assert frivolous positions. *See Gluck v. American Protection Industries*, 619 F.2d 30, 33 (9th Cir. 1980); *Gagne v. Maher*, 594 F.2d 336, 340 (2d Cir. 1979), aff'd, *Maher v. Gagne, supra; Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir. 1978). Of course, this finding does not mean that the Court considers that all the hours claimed were in fact reasonably expended. This issue will be considered below.

A *second* reason underlying the Court's rejection of defendant's argument in this area is that defendants have overstated plaintiffs' alleged lack of success in the three areas mentioned above. With respect to the temporary restraining order, the Court initially denied the class-wide relief requested, but two weeks later granted precisely that relief when it issued a preliminary injunction. Also, although it is true that the Court denied plaintiffs' motion to intervene three more named plaintiffs and to expand the class, the Court did not do so on the merits but solely because the appeal of the Court's issuance of a preliminary injunction was pending before the Second Circuit. Plaintiffs' counsel immediately sought and obtained a remand from the Second Circuit so that the Court could properly consider plaintiffs' motion. Upon remand, the Court reviewed the same papers which were prepared by counsel prior to the remand, and granted the motion in all respects. Finally, Magistrate Sinclair's denial of plaintiffs' motion to compel discovery, while not entirely favorable to plaintiffs, clearly established a mechanism by which plaintiffs could obtain substantially all of the discovery sought by that motion. Based on the Magistrate's statement that defendants' "bald assertions of burdensomeness and unavailability of data are not particularly persuasive," it seems plaintiffs' attorneys had reasonable cause for bringing the motion and they are entitled to be compensated for so doing.[5]

*Calculating the "Lodestar"*

■ Having resolved the threshold issue of whether plaintiffs are prevailing parties,

---

5. Defendants rely on three cases, each of which the Court finds unpersuasive. *See Nadeau v.* *Helgemoe*, 581 F.2d 275 (1st Cir. 1978); *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978);

the Court must next calculate the number of hours that plaintiffs' attorneys reasonably spent on the case. The Court must then value that time as to each of the attorneys in view of their experience and skill by determining "the hourly rate normally charged for similar work for attorneys of like skill in the area." *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977) ["*Grinnell II*"]; accord, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470–73 (2d Cir. 1974) ["*Grinnell I*"]. Multiplying the hours expended by the reasonable value of the attorneys' services results in the "lodestar" figure. And "[o]nce this . . . 'lodestar' rate [is] established, other less objective factors, such as the 'risk of litigation', the complexity of the issues, and the skill of the attorneys, [can] be introduced to determine a final fee amount." *Grinnell II, supra,* 560 F.2d at 1098.

*Regina v. Dalsheim,* 78 Civ. 1627 (S.D.N.Y. Sept. 15, 1980). Unlike the present case, in which plaintiffs obtained precisely the relief sought, the plaintiff inmate class in *Nadeau* was successful on only one of many claims relating to prison conditions. The First Circuit directed the district court to award a fee on the issues in which the plaintiff class prevailed. *Nadeau v. Helgemoe, supra,* 581 F.2d at 278–79. In *Hughes,* as well, plaintiffs failed to prevail on all or even most of the several claims asserted. The Third Circuit held that plaintiffs could recover an attorney's fee with respect to those claims on which they prevailed, concluding that "a prevailing party . . . is one who fairly can be found by the district court to have essentially succeeded on such claim[s]." *Hughes v. Repko, supra,* 578 F.2d at 487. Applied to the case at bar, this reasoning demonstrates that, because plaintiffs essentially prevailed on all of their claims, they are entitled to an award of attorneys' fees with respect to the entire case. Finally, in *Regina,* Judge Stewart of this district held that plaintiff's attorney was entitled to a fee with respect to only one of three distinct claims because plaintiff had prevailed on only that claim. *Regina v. Dalsheim, supra,* slip op. at 3. In short, each of these cases is distinguishable from the present case because here plaintiffs prevailed on every claim.

The hours and total amounts claimed by the various attorneys are set forth below:

Mid-Hudson Legal Services, Inc.[6]

| Attorney | Hours Claimed | Rate Per Hour | Total |
|---|---|---|---|
| Bloom | 167.50 | $90 | $15,075.00 |
| Gorman | 3.00 | $90 | 270.00 |
| Hetherington | 173.25 | $75 | 12,993.75 |
| | 33.70 | $90 | 3,033.00 |
| Kaufman | 461.55 | $75 | 34,616.25 |
| | 39.63 | $90 | 3,566.70 |
| Kolb | 53.00 | $75 | 3,975.00 |
| | .50 | $90 | 45.00 |
| Lazar | 65.65 | $75 | 4,923.75 |
| Totals | 997.78 | | $78,498.45 |

Teitelbaum & Hiller, P.C.[7]

| | | | |
|---|---|---|---|
| Berner | 167.75 | $100 | $16,775.00 |
| Teitelbaum | 57.25 | $125 | 7,156.25 |
| Totals | 225.00 | | $23,931.25 |

The total hours claimed is 1,222.78, and the total fee request is $102,429.70,[8] exclusive of

6. *See* Gorman Affidavit ¶ 11. In his affidavit, Gorman claims for Kolb 46 hours compensable at $75 per hour, and .50 hours compensable at $90 per hour. A review of Kolb's affidavit reveals this to be an error; the actual hours claimed are set forth in the above table. *See* Affidavit of Michael Kolb ¶ 5 (filed Apr. 8, 1980) ["Kolb Affidavit"].

7. *See* Affidavit of Herbert Teitelbaum, Exhibits D and E (filed Apr. 8, 1980) ["Teitelbaum Affidavit"]; Teitelbaum Affidavit, Exhibit A (filed Sept. 8, 1980); Teitelbaum Affidavit, Exhibit A (filed Oct. 8, 1980); Affidavit of Richard O. Berner, Exhibit A (filed Sept. 8, 1980) ["Berner Affidavit"]; Berner Affidavit, Exhibit A (filed Oct. 8, 1980).

8. Defendants state that Mid-Hudson claims attorneys' fees for 990.78 hours, not 997.78. *See* Defendants' Memo at 3. This error can be attributed to the error in the Gorman Affidavit with respect to Kolb's hours. *See* note 6 *supra.* Plaintiffs state that the total current fee request for the Mid-Hudson attorneys is $89,717.20, and that this is based upon a total of 987.78 hours expended. *See* Plaintiffs' Memo at 45. Because these figures seem to have no relation to the affidavits submitted or the testimony adduced at the hearing, the Court has disregarded them.

a requested bonus for the services of the Mid-Hudson attorneys.[9]

*Sufficiency of the Time Records*

 Defendants urge the Court to reject the fee application in its entirety on the ground that the time records submitted to the Court are not sufficiently accurate to form a basis for the Court's determination of "hours reasonably spent." Defendants correctly state that the Court should normally rely on contemporaneously-kept time records, but may also base a fee award on "reconstructed" time records, if such records detail "how the time in fact expended was conservatively reconstructed by reference to pleading files, the time records of other attorneys, and other contemporaneous documents." *Grinnell II, supra,* 560 F.2d at 1102–03. In short, if the Court finds the reconstruction to have been carefully done, it may conclude that the hours claimed are fair and reasonable, and proceed to calculate the "lodestar." Defendants argue that the affidavits of each of the eight attorneys involved, all of which are summaries of time spent and, thus, reconstructions, do not comply with the *Grinnell II* standard. The Court, however, rejects this argument, finding that all of the reconstructed records are sufficient under *Grinnell II.*

Defendants attack the Bloom and Lazar affidavits as generally insufficient under *Grinnell II.* Bloom, however, testified at the hearing that in drafting her affidavit, she relied on her own contemporaneous time records. *Hurley v. Blum,* Transcript of Hearing at 12 (Sept. 8, 1980) [hereinafter "Tr."]. Moreover, Bloom states in her affidavit that the entries on the time sheets were transferred from notations in her appointment books,[10] and that these entries were regularly maintained. Affidavit of Jane E. Bloom ¶ 9 (filed Apr. 8, 1980) ["Bloom Affidavit"]. Lazar testified that she kept contemporaneous notes on the case file and then transferred them to time sheets. Tr. at 28. And in her affidavit, Lazar states, in reference to these notes and time sheets, that the reconstruction of hours was based on regularly maintained records.[11] Affidavit of Kathryn S. Lazar ¶ 5 (filed Apr. 8, 1980) ["Lazar Affidavit"]. The Court finds that the representations of these attorneys are credible and that they therefore satisfy the *Grinnell II* standard.[12]

Defendants argue that the Court cannot accept the hours claimed by Hetherington, because his affidavit is silent as to the basis on which the hours claimed were tabulated, and because he has never produced any underlying documentation to support his claim. *See* Affidavit of Bryan D. Hetherington (filed Apr. 8, 1980) ["Hetherington Affidavit"]. Defendants, however, ignore Hetherington's testimony that he did indeed maintain regular and contemporaneous time records and that he transferred these records to time sheet forms that Mid-Hudson adopted during the pendency of this matter. Tr. at 34–35. Therefore, the Court finds Hetherington's affidavit to be sufficiently reliable under the *Grinnell II* standard.[13]

Defendants challenge Kolb's claimed hours on the ground that an attorney, in reconstructing his time records, may not rely on the records of fellow attorneys, especially if the latter records are not produced. Plaintiffs acknowledge that Kolb reconstructed his records based on the records

---

9. Plaintiffs request a $15 per hour bonus for the services of the Mid-Hudson attorneys, or $14,966.70. With the addition of this amount to the previous total, the requested fee award totals $117,396.40.

10. Defendants' Exhibits A, B [hereinafter "DX —"].

11. DX C.

12. In light of this conclusion, the Court finds it unnecessary to consider the time sheets of Lazar, Bloom and Hetherington, *see* Teitelbaum

Affidavit, Exhibits D, E, F (filed Oct. 8, 1980), submitted by plaintiffs subsequent to the hearing. Defendants objected to the Court's considering these post-hearing submissions because these documents were not produced at the hearing and because the persons who purportedly prepared them are not available at this time for cross-examination. *See* Defendants' Reply Post-Hearing Memorandum of Law at 5 (filed Oct. 14, 1980).

13. *See* note 12 *supra.*

of Hetherington and Kaufman, *see* Kolb Affidavit ¶ 6, and correctly note that the Second Circuit has expressly approved this type of reconstruction. *See Grinnell II, supra,* 560 F.2d at 1103. *See also Gluck v. American Protection Industries, supra,* 619 F.2d at 33; *Harkless v. Sweeny Independent School District,* 608 F.2d 594, 597 (5th Cir. 1979). Kaufman's records, upon which Kolb relied, were produced at the hearing,[14] and the Court credits Hetherington's testimony that he did maintain similar records. *See* Tr. at 34–35. Thus, the Court finds that the reconstruction of hours in Kolb's affidavit is sufficient under *Grinnell II.*

Defendants attack Kaufman's affidavit on the grounds that the entries on his time sheets,[15] from which the hours listed in his affidavit were derived, were in part the product of his recollection rather than having been transferred entirely from contemporaneous notations in his desk calendar,[16] and that the entries in his desk calendar do not always agree with the entries on his time sheets. In light of (1) Kaufman's sworn statement that the hours listed were derived from calendar entries and time sheets, *see* Affidavit of Barry Kaufman ¶ 11 (filed Apr. 8, 1980), and (2) his testimony that these records were maintained contemporaneously with the work done, *see* Tr. at 48–49, the Court finds defendants' argument unpersuasive. Moreover, Kaufman testified that his time sheets were his complete time records and that his desk calendar contained only sporadic entries. Tr. at 50. Thus, defendants' comparison between the time sheets and the calendar entries, which has been offered to impeach the reliability of Kaufman's records, is misleading. The Court credits Kaufman's testimony that the time sheets are his complete records and finds that his affidavit is sufficiently reliable under *Grinnell II.*

14. DX D, E.

15. DX D.

16. DX E.

17. DX F, G, H, I.

18. Mid-Hudson retained T&H to represent plaintiffs on this fee application under the following arrangement: If the Court declined to

Finally, with respect to the Mid-Hudson attorneys, defendants attack Gorman's affidavit as a generally insufficient reconstruction under *Grinnell II.* Gorman states, however, that the listing of three hours he claims for assisting in the preparation of the fee application was based on contemporaneous entries in time sheets used at Mid-Hudson. Gorman Affidavit ¶ 18. The Court finds this to be clearly sufficient under *Grinnell II.*

Defendants also challenge the hours claimed by Teitelbaum and Berner on the ground that they have failed to support their reconstructions with contemporaneous time records or in any other manner sufficient under *Grinnell II.* In light of Teitelbaum and Berner's production of their diaries for 1979 and 1980,[17] their affidavits, and their testimony at the hearing, defendants' assertion on this point is frivolous. The T&H attorneys state in their affidavits that the hours listed therein are based on contemporaneously-kept time records, *see* Teitelbaum Affidavit ¶ 2 (filed Apr. 8, 1980); Teitelbaum Affidavit ¶ 2 (filed Sept. 8, 1980); Teitelbaum Affidavit ¶ 1 (filed Oct. 8, 1980); Berner Affidavit ¶ 3 (filed Sept. 8, 1980); Berner Affidavit ¶ 1 (filed Oct. 8, 1980), and they testified to the same effect, *see* Tr. at 112–13 (Teitelbaum); Tr. at 93–94 (Berner). Therefore, the Court finds that the affidavits of Teitelbaum and Berner are sufficiently reliable under *Grinnell II.*

The Court also rejects as unsupportable defendants' contention that attorneys in civil rights cases who obtain payment of their fees from the fund recovered by their clients are not entitled to recover fees under section 1988.[18] The law is clear

award any attorneys' fees, Mid-Hudson would not be obligated to pay T&H its fees. In the event fees were awarded, Mid-Hudson guaranteed T&H a fee pursuant to a base hourly rate of $100 for partners' time and $70 for associates' time. In no event, however, could the fee paid by Mid-Hudson to T&H exceed one-half of the total fees awarded by the Court. The agreement also provided that should the Court award T&H more than their base rates, T&H

that time spent on a fee application is compensable under this section. *Gagne v. Maher, supra,* 594 F.2d at 344; *see Prandini v. National Tea Co.,* 585 F.2d 47, 53 (3d Cir. 1978). Defendants' reliance on *Zarcone v. Perry,* 581 F.2d 1039 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), is misplaced. *Zarcone* simply held that the district court did not abuse its discretion under section 1988 when it refused to award fees to an attorney who, on a contingency fee basis, represented a civil rights plaintiff suing solely in his own behalf for damages to redress a private injury where the unlawful conduct was unlikely to recur. Under such circumstances, the Second Circuit found that an award of attorneys' fees would be unnecessary to achieve the purposes of the Civil Rights Act. Unlike *Zarcone,* the plaintiffs in the instant action are suing as "private attorneys general," and attorneys' fees *did* present an initial barrier to suit. The latter point is clearly evidenced by the fact that Mid-Hudson renders free legal assistance to indigent persons only, such as plaintiffs. A denial of a fee award in this case would clearly frustrate the purposes of the Civil Rights Act.

*Reasonableness of Hours Claimed*

The foregoing discussion demonstrates that the records submitted to the Court on this fee application are sufficiently reliable to permit the Court's consideration of them in full. It does not mean, however, that the Court is satisfied that the number of hours claimed by the various attorneys were reasonably and necessarily spent. *See Grinnell II, supra; Grinnell I, supra; Mid-Hudson Legal Services v. G & U, Inc.,* 465 F.Supp. 261, 271 (S.D.N.Y.1978). The Court is particularly concerned with the apparent duplication of effort on the part of the Mid-Hudson attorneys. Perhaps this was due to the relative inexperience of those attorneys when they worked on the case, or to the zealousness with which they obviously carried out their responsibilities. In any event, because of the large number of attorneys representing plaintiffs at any one time, the Court is obliged to scrutinize their efforts for evidence of unnecessary duplication. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). Having done so, the Court finds numerous instances of unnecessary duplication. For example, three attorneys prepared for, travelled to [19] and appeared on plaintiffs' application for a temporary restraining order on April 17, 1977, although only one spoke at a hearing lasting approximately fifteen minutes; five attorneys researched, drafted and edited a complaint and an order to show cause, with accompanying affidavits and sixteen-page memorandum of law, expending a total of 126 hours between April 15 and April 22, 1977; four attorneys prepared for, travelled to and appeared at a brief preliminary injunction hearing on April 22, 1977; and five attorneys expended some 384 hours to research, draft and edit papers relating to intervention proceedings and the appeal to the Second Circuit between June 1 and October 17, 1977. In addition, a total of 246 hours is claimed for inter-attorney conferences, which is obviously attributable to the number of attorneys working on the case. Therefore, the Court finds the hours claimed to be excessive, but because it is impossible to determine with exactitude the number of hours the Mid-Hudson attorneys should have reasonably expended on the case, the Court concludes that a one-third reduction represents a realistic estimate of the time reasonably required by competent attorneys to prosecute plaintiffs' claims and reach a settlement. *See Nero v. Lavine,* 75 Civ. 1024, slip op. at 9 (S.D.N.Y. Apr. 18, 1980). In light of the foregoing, the Court does not believe the efforts of the Mid-Hudson attorneys warrant a bonus award.

would be entitled to the amount awarded to it by the Court. Tr. at 130; *see* Plaintiffs' Memo at 32.

**19.** Mid-Hudson is located in Poughkeepsie, New York, which is approximately 90 miles from the United States Courthouse in Foley Square. One way, the trip takes approximately two and one-half hours by train, and at least one and one-half hours by automobile.

With respect to the efforts of Teitelbaum and Berner on the fee application, defendants essentially argue that the hours claimed are excessive because the matter was not difficult to litigate and because the performance of the T&H attorneys was mediocre. The Court, however, finds that defendants' claims in this regard are entirely unsupportable by the history of this case. The fee application *was* difficult to litigate, principally because of defendants' efforts to contest every issue and challenge every allegation with the utmost vigor. Moreover, the quality of Messrs. Teitelbaum and Berner's performance was of the highest calibre and consonant with the Court's expectation of attorneys with their skill and experience. Therefore, the Court finds that the total number of hours claimed by these two attorneys were reasonably and necessarily spent.

*Reasonable Value of the Attorneys' Services*

In determining the reasonable hourly rate for counsel, the Court finds that the Mid-Hudson attorneys, although public service attorneys, are entitled to the hourly rate prevailing among private practitioners at the time the services were rendered. Accordingly, the Court finds that rates of $75 per hour for attorneys with less than two years experience, and $90 per hour for attorneys with more than two years experience, are reasonable in view of these attorneys experience and the nature of the services performed in 1977 to the present. With respect to the services of Messrs. Teitelbaum and Berner, the Court finds that $125 per hour for Teitelbaum's services in preparing the current fee application is reasonable in light of his twelve years experience and special expertise in the area of civil rights litigation. The Court further finds that, in accordance with the rate approved for the Mid-Hudson attorneys with more than two years experience, the $100 per hour request for the services of Berner [20] is preparing the fee application should be reduced to $90 per hour.[21]

The foregoing yields the following results:

| | Reasonable and Necessary Hours Spent | Reasonable Rate Per Hour | Award |
|---|---|---|---|
| Mid-Hudson attorneys | 502.30 | $75 | $37,672.50 |
| | 162.89 | $90 | 14,660.10 |
| Berner | 167.75 | $90 | 15,097.50 |
| Teitelbaum | 57.25 | $125 | 7,156.25 |
| | Total | | $74,586.35 |

## CONCLUSION

In accordance with the foregoing, the Court concludes that the applicants are entitled to $74,586.35 in attorneys' fees, which represents $52,332.60 for the services of the Mid-Hudson attorneys, and $22,253.75 for the services of Teitelbaum & Hiller, P.C. The Court also awards $1,831.98 for costs and disbursements,[22] which results in a total

**20.** At the time he worked on the instant fee application, Berner had three years legal experience.

**21.** The Court further finds that, applying "other less objective factors" under *Grinnell II*, the circumstances of this case do not warrant an increase or further decrease in the lodestar to reach a final fee amount. *See Grinnell II, supra*, 560 F.2d at 1098.

**22.** Although plaintiffs state in their post-hearing submission that Mid-Hudson's costs and disbursements to date are $1,201.04 and that T&H's to date are $476.40, *see* Plaintiffs' Memo at 45, a review of the various affidavits and a letter received from Mid-Hudson indicates that these amounts should be $1,505.99 for Mid-Hudson and $494.19 for T&H:

Mid-Hudson

| Travel | $ 504.59 |
|---|---|
| Duplicating and transcripts | 1,001.40 |
| Total | $1,505.99 |

*See* Bloom Affidavit ¶ 10; Gorman Affidavit ¶ 12; Hetherington Affidavit ¶ 9; Kaufman Affidavit ¶ 12; Lazar Affidavit ¶ 6; Letter of Barry Kaufman (dated Dec. 10, 1980).

T&H

| Photocopying | $395.76 |
|---|---|
| Telephone | 49.22 |
| Postage | 21.36 |
| Messenger | 19.25 |
| Carfare | 8.60 |
| Total | $494.19 |

award of $76,418.33. 42 U.S.C. § 1988; 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d).

Settle order on notice.

SO ORDERED.

*See* Teitelbaum Affidavit, Exhibit D (filed Apr. 8, 1980); Teitelbaum Affidavit, Exhibit C (filed Oct. 8, 1980). Contrary to defendants' assertion, these costs and disbursements are recoverable under section 1988. *See Population Servs. International v. Carey*, 476 F.Supp. 4, 8 (S.D.N.Y.1979).

In light of the often excessive number of Mid-Hudson attorneys who travelled between Poughkeepsie and New York City, the Court has reduced Mid-Hudson's request for travel expenses by one-third, to $336.39, which reduces the total costs and disbursements request from $2,000.18 to $1,831.98.