In the Matter of ELBERT FAIRLY, on Behalf of His Minor Child, ALKEESHA FAIRLY, and All Others Similarly Situated, Appellant, v JOHN FAHEY, as Commissioner of the Albany County Department of Social Services, et al., Respondents.

Third Department, February 5, 1981

#### APPEARANCES OF COUNSEL

*Michael M. Moore* for appellant.

*Robert Lyman* and *Philip R. Murray (Alan P. Joseph* of counsel), for John Fahey, respondent.

*Robert Abrams,* Attorney-General *(Clifford A. Royael* and *Shirley Adelson Siegel* of counsel), for Barbara Blum, respondent.

#### OPINION OF THE COURT

CASEY, J.

Shortly after this court affirmed the judgment appealed from *(Matter of Fairly v Fahey,* 75 AD2d 158), the United States Supreme Court rendered a decision that affected the counsel fees' portion of our determination *(Maine v Thiboutot,* 448 US 1), and, therefore, we granted petitioner's motion for leave to reargue. Our prior decision to deny counsel fees in this case was based (1) on the restrictive in-

terpretation seemingly placed on section 1983 of title 42 of the United States Code by *Chapman v Houston Welfare Rights Organization* (441 US 600, 617-618) *(Matter of Fairly v Fahey, supra,* pp 161-162 [CASEY, J.]), and (2) on the ground that it would be an abuse of discretion to grant counsel fees to a Legal Aid Society supported by public funds *(Matter of Fairly v Fahey, supra,* p 162 [HERLIHY, J., concurring]).

In *Maine v Thiboutot (supra),* the Supreme Court construed the phrase "secured by the Constitution and laws" (US Code, tit 42, § 1983) broadly, to encompass claims based on purely statutory violations of Federal law, without limitation to civil rights or equal protection violations. Thus, the court held that an action under section 1983 could be based on an alleged violation of the Federal Social Security Act and, further, that under section 1988 (US Code, tit 42, § 1988), the award of counsel fees is available as part of the remedy in such an action, whether the action is brought in Federal or State court. Thus, there is statutory authority for awarding counsel fees to petitioner herein. (See, also, *Matter of Ashley v Curtis,* 67 AD2d 828.)

The second ground for denying counsel fees to petitioner, relied on by the concurring opinion in our prior decision, should not be considered a bar to the relief sought either in view of *New York Gaslight Club v Carey* (447 US 54), where the United States Supreme Court noted that absent "special circumstances" counsel fees authorized by the Civil Rights Act should be awarded (p 68) and rejected the argument that "representation by a public interest group is a 'special circumstance' that should result in denial of counsel fees" (p 70, n 9). Similarly, the United States Court of Appeals for the Second Circuit has rejected the argument that an award of counsel fees was improper where the legal services available to the plaintiff are Federally funded *(Holley v Lavine,* 605 F2d 638, 646; *Mid-Hudson Legal Servs. v G & U, Inc.,* 578 F2d 34), and other courts are in agreement that Federal funding to the public interest groups representing a plaintiff is not a special circumstance justifying the denial of counsel fees under section 1988 (e.g., *Leeds v Watson,* 630 F2d 674, 677; *Oldham v Ehrlich,* 617 F2d 163, 168; *Perez v Rodriguez*

*Bou*, 575 F2d 21, 24). As explained in *Rodriguez v Taylor* (569 F2d 1231, 1245, cert den 436 US 913): "The award of fees to legal aid offices and other groups furnishing *pro bono publico* representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights."

Accordingly, the order of this court, entered June 24, 1980, should be vacated; the judgment of Special Term should be modified by reversing so much thereof as denied petitioner's motion for counsel fees and the matter should be remitted to Special Term for a determination of the reasonable amount of counsel fees to be awarded (see *Young v Toia*, 66 AD2d 377).*

KANE, J. (concurring). I agree with the legal conclusion of the majority that Special Term, in the exercise of its discretion, may award reasonable attorneys' fees in this matter (US Code, tit 42, § 1988). However, the majority does not address an important subsidiary question: "To whom should the payment be made?" If the actual payment requires nothing more than a shift of public funds from one agency to another, so be it. But, if the payment is made to or ultimately received by petitioner, the award would, in my view, represent an unwarranted gift of taxpayers' funds. There is authority for the proposition that, when attorneys' fees are awarded, the moneys belong to the client even though they are disbursed to the attorney (see *Baker v Baker*, 17 AD2d 924). However, if that rule should prevail in this instance, a gross injustice would result for the petitioner has not incurred any liability for legal expenses. Accordingly, in remitting the matter to Special Term, we

---

* Although the courts are in agreement that Federal funding does not justify denial of an award of counsel fees, there appears to be a disagreement as to whether that factor can be considered by the court in exercising its discretion to fix the *amount* of the award (compare *Gagne v Maher*, 594 F2d 336, affd 448 US 122, with *Leeds v Watson*, *supra*; *Oldham v Ehrlich*, *supra*).

should make it plain that the ultimate award cannot be shared by petitioner and must remain with the agency which furnished legal assistance to him.

## DISCUSSION

HERLIHY, J. (dissenting). In filing this dissent, let me make it clear that it in no way rejects the right of an indigent person to seek or require the aid and counsel of a Federally funded legal aid corporation. In a recent case argued before this court, a legal aid attorney conceded that there was no provision in the statute as to the disposition of counsel fees, but in that particular case he stated that a stipulation had been entered into as to the disposition of the award. It was the opinion of counsel that awarding such fees was in the nature of a penalty or punishment because the social services agency had either made a mistake or misinterpreted the law. Such is the background of the social-economic legal problem presented by the instant case.

I am further cognizant of the fact that some members of Congress, during the debate of the proposed law and amendments thereto, suggested that attorneys' fees should be awarded in the discretion of the court, but the ambiguity of the statute which became law creates great doubt. The New York Court of Appeals in *People v Whidden* (51 NY2d 457, 462) recently stated: "There is little question that what motivates one legislator to propose or make a speech urging the passage of a statute is not necessarily what motivates scores of others to enact it *(United States v O'Brien,* 39 US 367, 383-384)." If it was the intent of Congress, it is reasonable to assume that some provision would have been made for the disposition of said attorneys' fees as was done in subdivision (c) of section 2996i of title 42 of the United States Code (all statutory references hereinafter are to the United States Code). These far-reaching suggestions seem to be refuted by noting that subdivision (f) of section 2996e of title 42 provides that actions by the legal aid corporation for the sole purpose of harassment or malicious abuse of process shall subject it to reasonable costs and legal fees incurred by the defendant.

This dissent does not involve the issue whether a private

attorney or a non-Federally funded agency is entitled in the discretion of the court to such fees. *(Alyeska Pipeline Serv. Co. v Wilderness Soc.,* 421 US 240, 263, 264; *Newman v Piggie Park Enterprises,* 390 US 400; *Hoitt v Vitek,* 495 F2d 219.) Although there is dictum as to the issue, research fails to disclose any United States Supreme Court decisions deciding the precise issue involved in this case. The decisions relied upon by the majority do not concern the granting of legal fees to a Federally funded Legal Aid Society.

After this discussion, the problem presented is whether a legal aid corporation, funded by the Federal Government from taxpayers' money, whose attorneys are paid a substantial salary, should be entitled to additional attorneys' fees in the discretion of the court payable by a State or local agency. It is obvious that if the conclusion of the majority is accepted, it will have an enormous impact upon the budgets of these agencies which are presently struggling with financial problems of great magnitude. Recent court holdings have gone to the extent of saying "yes", except under special circumstances, and have justified the allowance of such fees pursuant to section 1988 on the grounds that it will assist the limited budgets of legal aid corporations *(Rodriguez v Taylor,* 569 F2d 1231, 1245, cert den 436 US 913). I respectfully suggest that there is no evidence of such limited budgets and further that it is a legislative and not a judicial function or concern where there is no such authority pursuant to statute. We are concerned with two primary issues.

(1)

The Legal Aid Societies were funded pursuant to title 42 of the United States Code (of which section 1988 is a part) and upon reading this statute, the question is whether it can be judicially determined that such organizations are entitled to attorneys' fees. Congress was obviously aware of such a potential source of income for the recipients of funds from its designated nonagent legal services corporation. In section 2996f (subd [b], par [1]) of title 42, it is provided:

"(b) No funds made available by the Corporation under this subchapter, either by grant or contract, may be used—

"(1) to provide legal assistance (except in accordance

with guidelines promulgated by the Corporation) with respect to any fee-generating case (which guidelines shall not preclude the provision of legal assistance in cases in which a client seeks only statutory benefits and appropriate private representation is not available)".

In *Alyeska Pipeline Serv. Co. v Wilderness Soc.* (421 US 240, 262, *supra*), the court, in a footnote to its majority opinion (pp 262-263, n 36), set forth a brief review of remarks by the Congress and concluded: "[t]hus, if other plaintiffs might recover [fees] * * * so might the Corporation [legal service entities]." However, the *Alyeska* decision did not expressly consider the restrictive language quoted hereinabove.

In *Rodriguez v Taylor* (569 F2d 1231, 1246, *supra*), the United States Court of Appeals, Third Circuit, gave detailed consideration to the restrictions placed by Congress on legal service entities and concluded: "The Legal Services Corporation has adopted implementing regulations which do not flatly prohibit legal services organizations from maintaining fee-generating cases in all situations. 45 C.F.R. §§ 1609 *et seq.* (1976). The regulations qualify the statutory bar by permitting legal services organizations to provide counsel in fee-generating cases as a matter of last resort if no other adequate private representation is available. *Id.* § 1609.3. The thrust of the enabling regulations is that legal services organizations should not compete with private practitioners but that if no private attorneys were willing to accept a particular fee-generating case, then legal aid offices may furnish counsel. With this policy rationale as a backdrop, the Corporations' guidelines expressly permit recipient organizations to accept court-awarded fees if there are certain assurances that private counsel is unavailable. *Id* §§ 1609.4, 1609.5."

It is thus apparent that legal service entities are not precluded from representing indigents in fee-generating cases such as the instant case, but the authorization to participate in such cases is limited. In *Rodriquez*, it was held that the legal services entity need not affirmatively show that no other adequate private representation was available *(Rodriguez v Taylor, supra,* p 1246). In view of the fact that sec-

tion 1988 of title 42 of the United States Code became effective in 1976 and the common knowledge that New York attorneys in general are not averse to accepting cases in which the fee is contingent in nature, it should be incumbent upon the instant petitioner to show that adequate private representation was not available.

Accordingly, the proposed remittal of this proceeding to Special Term should be for the initial purpose of establishing that the legal services entity herein can accept fees if awarded.

## (2)

The remaining and dispositive issue in this proceeding is whether the present record supports a basis whereby Special Term could validly exercise its discretion to grant attorneys' fees to the petitioner. It is apparent that a grant of attorneys' fees in this case will result in the transfer of Federal tax dollars from one tax-supported entity to another such entity. Such a patently contradictory result should not be permitted unless clearly intended by Congress.

The suggestion of the majority that the case of *New York Gaslight Club v Carey* (447 US 54, 67, 68) is precedent for the award of counsel fees in this case oversimplifies the consideration of "special circumstances" which severely restrict the discretion of a court in awarding such fees.

The rendition of services as counsel in proceedings involving tax funds where attorneys' fees would be paid solely from tax funds should be a "special circumstance" disqualifying Legal Aid Societies from entitlement to such fees in the exercise of discretion. The Legal Aid Society of Albany, Inc., which represented the petitioner herein, is Federally funded and supported with taxpayers' money and its attorneys are paid substantial salaries for the services they render. To allow attorneys' fees in such instance is abhorrent to the concept of such fees.

The United States Supreme Court did not expressly pass on the present situation in the *New York Gaslight Club* case *(supra)*, but one of the cases referred to therein, *Reynolds v Coomey* (567 F2d 1166) refers to the case of *Hoitt v*

*Vitek* (495 F2d 219, *supra*), which affirmed a denial of fees for services rendered by the tax-supported New Hampshire legal assistance entity in a successful action against prison authorities on behalf of prisoners. Nor do I find *Maine v Thiboutot* (448 US 1) controlling.

I find that the award of counsel fees in this case would be an abuse of discretion since it serves no useful purpose either in furthering the maintenance of proceedings on behalf of indigent claimants of benefits in social services proceedings or in requiring government to carry out its own laws and regulations. Such an award would in fact open a Pandora's box which, within a brief period of time, would result in an enormous increase in State and local budgets.

In my opinion, it was not the intent of the United States Congress to authorize such a result and the majority view should not, therefore, be sustained.

The judgment should be affirmed.

MAHONEY, P. J., and MIKOLL, J., concur with CASEY, J.; KANE, J., concurs in a separate opinion; HERLIHY, J., dissents and votes to affirm in a separate opinion.

Order of this court, entered June 24, 1980, vacated; judgment of Special Term modified, on the law, by reversing so much thereof as denied petitioner's motion for counsel fees and matter remitted to Special Term for a determination of the reasonable amount of counsel fees to be awarded, and, as so modified, affirmed, with costs to petitioner.