OPINION OF THE COURT
Hortense W. Gabel, J.
Motion Nos. 13 and 14 are consolidated for disposition.
Plaintiffs move for a preliminary injunction and for class action certification. The State defendants cross-move for summary judgment dismissing the complaint. Defendant Bronx Manor Home for Adults and the individual partners named as defendants join in seeking summary judgment dismissing the complaint. Plaintiffs Sarah Thornton and Edward Madsen (who had been granted leave to intervene as a party plaintiff) have settled with the operators of their respective homes and discontinued the action as to the latter.
nature of action
This action seeks to establish certain minimal standards for protecting residents in adult care facilities from being evicted arbitrarily and without an opportunity to be heard. Declaratory and injunctive relief is sought. In essence, plaintiffs claim that defendants have violated the due process guarantees of the United States Constitution and of the New York State Constitution, as well as the Social Security Act (US Code, tit 42, § 1318 et seq.), and section 461 of the New York Social Services Law and RPAPL article 7. Plaintiffs seek to enjoin the defendant operators of adult care facilities from evicting residents without first affording the latter notice stating the reasons for which eviction is sought and an opportunity for a fair and impartial hearing to respond to those charges. Plaintiffs also seek to compel the State defendants to promulgate appropriate regulations to effectuate appropriate standards for evictions from adult residential facilities.
Several conferences have been had in chambers in an attempt at resolving the dispute amicably. Although the gap separating the parties has been narrowed, it has not been bridged completely. However, all of the attorneys, especially the representatives from the Attorney-General’s office and the Legal Aid Society, are to be commended for *680 their spirit of co-operation, courtesy (to the court and to each other) and professionalism.
Preliminarily, after this action was commenced, the State defendants agreed to send a directive, to all adult home proprietors mandating that all evictions be accomplished pursuant to RPAPL article 7 after the resident had been provided with a 30-day notice setting forth the grounds for eviction. However, plaintiffs’ position is that that concession, while a step in the right direction, does not go far enough since, conceivably, at the end of 30 days the adult home proprietor would be able to evict a resident without having to prove the validity of the grounds alleged in the notice and without even affording the resident an opportunity to refute the proprietor’s accusations in an impartial tribunal. Significantly, the parties who have settled and discontinued this action have agreed to the giving of 30 days’ notice by the proprietor of specified grounds for seeking eviction, which grounds must thereafter be established in the Landlord-Tenant Part of the Civil Court in a proceeding pursuant to RPAPL article 7.
The instant controversy arose when Bronx Manor Home for Adults (Bronx Manor) threatened to evict plaintiff Jay Nelson Campbell for allegedly threatening, intimidating, harassing and disturbing other residents as well as staff at the home. He denies the allegations made by Bronx Manor and asserts that the real reason that they are seeking to evict him is because he had complained about conditions there. Mr. Campbell, who has been receiving psychiatric care at Payne Whitney Psychiatric Clinic since 1972, subsists on monthly Supplemental Security Income (SSI) checks, which he indorses over to Bronx Manor.
STATE REGULATION OF ADULT HOMES
In the context of this action, plaintiff’s receipt of SSI benefits is of great significance. According to the affidavit of Corinne Plummer, Deputy Commissioner of the Division of Adult Services of the New York State Department of Social Services, approximately 70% of adult home residents receive SSI payments. These SSI payments — which go directly to the residents, not to the home — are automatically increased once the SSI recipient becomes a resi *681 dent of an adult home. While the State does not set rates which adult homes may charge to residents per se, by law (Social Services Law, § 131-o) the rate charged must be such as to permit the recipient to retain from his SSI check a specific amount of money as a personal allowance.
The Social Security Act (US Code, tit 42, § 1382e, subd [e], par [1]) directs that “[e]ach State shall establish or designate one or more State or local authorities which shall establish, maintain, and insure the enforcement of standards for any category of institutions, foster homes, or group living arrangements in which *** a significant number of recipients of supplemental security income benefits is residing or is likely to reside” and that such standards “shall govern such matters as admissions policies * * * and protection of civil rights”.
The New York State Department of Social Services is very much involved in the supervision of adult residential homes (see Social Services Law, art 7, tit 2, § 461 et seq.; 18 NYCRR 487.1 et seq.). Section 461 of the Social Services Law provides, in pertinent part, as follows:
“§461. Responsibility for standards
“1. The department shall promulgate and may alter or amend regulations effectuating the provisions of this title, including but not limited to establishing fiscal, administrative, architectural, safety, nutritional and program standards which apply to all adult care facilities subject to its inspection and supervision.”
Along the same lines, section 461-a of the Social Services Law provides in pertinent part, as follows:
“§ 461-a. Responsibility for inspection and supervision
“1. The department shall be responsible for the inspection and supervision of all adult care facilities”.
“§461-b. ***
“2. (d) Every private proprietary home for adults shall provide a written statement to all persons applying for admission as residents of such facility. Such statement shall be printed in a minimum of eight point type, dated and signed by the parties to be charged, and shall contain the entire agreement of the parties *** The written *682 statement shall include a statement indicating that the resident shall be provided written notification by the facility not less than thirty days prior to a termination of the resident’s admission and services agreement” (emphasis added).
Section 461-d of the Social Services Law provides, in pertinent part, as follows:
“§ 461-d. Rights of residents in private proprietary homes for adults
“1. The principles enunciated in subdivision three hereof are declared to be the public policy of the state and a copy of such statement of rights and responsibilities shall be posted conspicuously in a public place in each facility covered hereunder. ***
“3. Said statement of rights and responsibilities shall include, but not be limited to the following:
“(a) Every resident’s civil and religious liberties, including the right to independent personal decisions and knowledge of available choices, shall not be infringed and the facility shall encourage and assist in the fullest possible exercise of these rights.
“(b) Every resident shall have the right to have private communications and consultations with his or her physician, attorney, and any other person.
“(c) Every resident shall have the right to present grievances on behalf of himself or herself or others, to the facility’s staff or administrator, to governmental officials, or to any person without fear of reprisal, and to join with other residents or individuals within or outside of the facility to work for improvements in resident care” (emphasis added).
Deputy Commissioner Plummer states in her affidavit, “it has been this Department’s experience that most adult home operators will not evict a resident without cause”: This makes clear the problem necessitating this lawsuit: by necessary implication, some adult home operators will (or will attempt to) evict a resident without cause.
As the several conferences among the parties, as well as the voluminous papers and affidavits make clear, there is *683 general agreement on what should be done, viz., there should be guidelines or formal grounds for evicting residents of adult homes on appropriate notice. The parties are even in agreement as to what these grounds should be. The stumbling block to a settlement of this action has been on how the guidelines or grounds for eviction should be laid down: by judicial fiat, by legislation, or by administrative regulations.
In an unusual exercise of bureaucratic restraint or deference, the State defendants claim that they lack the necessary authority to promulgate regulations specifying the grounds for which an operator of an adult home may evict a resident. This court disagrees. The authority to promulgate such regulations may reasonably be implied from sections 461 and 461-a of the Social Services Law (see Ostrer v Schenck, 41 NY2d 782, 785-786), which gives the Department of Social Services the power to promulgate regulations dealing with the administration and supervision of adult homes and directs that 30 days’ written notification be given prior to “terminating” (a euphemism for “evicting”) a resident, and prohibits reprisals against residents who complain about conditions.
Had they so desired, the State defendants could have promulgated regulations setting forth grounds for evicting residents of adult homes. Then, assuming that a justiciable controversy (such as this) arose, the regulation could have been challenged by an action for a declaratory judgment (see Plaza Health Clubs v City of New York, 76 AD2d 509; Halpern v Lomenzo, 35 AD2d 41, 43).
However, in an unusual display of bureaucratic timidity and restraint, for whatever reason, the State defendants chose to wait guidance from the Legislature, rather than “grabbing the bull by the horns” themselves.
In view of the explicit language contained in both the Federal Social Security Act, and in the New York State Social Services Law, the court declares that the State defendants not only have the power to promulgate regulations governing procedures and standards for evictions from adult homes, but they have the duty to do so. The court has been informed that the Legislature has, in fact, passed a bill setting forth procedure and grounds for evict *684 ing residents from adult homes. Although the bill was signed by the Governor on July 31, 1981, by its terms it will not take effect until October 1, 1981. Therefore, the primary issues raised in this action are not rendered academic.
OPERATION OF ADULT HOME AS “STATE ACTION”
The threshold issue in this lawsuit is whether the action of private proprietors of adult homes constitutes “State action” within the purview of the due process clause. This court finds that it does.
The residential adult homes involved in this action perform a necessary “public function” of providing quality care for needy adults in order to “protect and assure the life, health, safety and comfort of adults * * * who must be cared for away from their own homes” (Social Services Law, § 460, declaration of policy and statement of purpose [L 1977, ch 669]). But for the business activities of the nominally private adult home proprietors, the care of these needy adults would have fallen on the shoulders of the State government, which is ultimately responsible for their care (Perez v Sugarman, 499 F2d 761, 765). Although the adult homes are nominally private, they accomplish a public purpose. Moreover, the statutory and administrative framework by which the State regulates, funds and supervises the homes is so pervasive that the private conduct of the proprietors has become “so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action” (Evans v Newton, 382 US 296, 299). In view of the elaborate and comprehensive governmental regulation of adult homes, there is “a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself” (Jackson v Metropolitan Edison Co., 419 US 345, 350-351; Montalvo v Consolidated Edison Co. of N.Y., 110 Misc 2d 24). In addition, since a valuable property right of a resident — the amount of his SSI payments — is directly affected adversely by his eviction from an adult home, the State has in effect, delegated to the private proprietor the decision to increase or decrease the benefits received by the SSI recipi *685 ent (see Yaretsky v Blum, 629 F2d 817; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 158). Therefore, the actions of the proprietors constitute “State action” sufficient to subject them to the requirements of the due process clause.
Since the proprietors of adult homes are required to afford due process of law to residents, the latter may not be evicted except upon a showing of good cause after having been given notice of the alleged causes for eviction, and an opportunity to confront and cross-examine witnesses, and upon a decision rendered by an impartial tribunal upon the evidence presented (Lopez v Henry Phipps Plaza South, 498 F2d 937; Hudsonview Terrace v Maury, 100 Misc 2d 331).
Accordingly, the motion for injunctive relief and for a declaratory judgment, and the cross motion for summary judgment are granted to the extent of declaring as follows: the action of private proprietors of adult homes in evicting or in attempting to evict residents constitutes “State action” within the purview of the due process clause; the proprietors of an adult home may not involuntarily evict a resident except upon the giving of 30 days’ written notice and the bringing of a proceeding in accordance with RPAPL article 7, at which proceeding the proprietor shall bear the burden of proving the existence of good cause for evicting the resident; and that the State defendants are directed to promulgate regulations governing the eviction of residents of adult homes within 30 days after service of a copy of the order to be settled hereupon, with notice of entry. It is suggested that these regulations be along the same lines as the terms of the stipulation of settlement between Edward Madsen and Bronxwood Home for the Aged, Inc.
Plaintiff Campbell has not been lost in the macrocosmic aspects of this action. To the extent that he seeks to enjoin Bronx Manor Home for Adults from evicting him, that branch of the action is severed and the stay previously granted is modified to the extent of permitting Bronx Manor to bring a proceeding in an appropriate tribunal upon the giving of 30 days’ notice of the grounds upon which eviction is sought, in accordance with the due process requirements set forth herein. To the extent that he *686 seeks money damages, the complaint is dismissed for want of a showing that he has, in fact, been damaged.
CLASS ACTION CERTIFICATION
The request by plaintiffs for class action certification is denied. As the Court of Appeals has held, where “governmental operations” are involved, a class action is not appropriate since “comparable relief would adequately flow to others similarly situated under principles of stare decisis” (Matter of Rivera v Trimarco, 36 NY2d 747, 749). In the case at bar, once the State defendants promulgate appropriate regulations governing evictions, all residents of adult homes would be protected. The absence of any such regulations is the one thread common to all purported members of the class. Once that loose end is tied up, there is no longer a common question of law or fact predominating over questions affecting only individual member (CPLR 901, subd a, par 2). Presumably, the grounds for seeking the eviction of residents will vary from case to case (see Reis v Club Med, 81 AD2d 793; Ross v Amrep Corp., 57 AD2d 99, app dsmd 42 NY2d 910).
COUNSEL FEE REQUEST
Plaintiffs also request an allowance of counsel fees pursuant to sections 1983 and 1988 of title 42 of the United States Code. That statute authorizes the discretionary allowance of counsel fees to the prevailing party where an action is brought to enforce rights “secured by the Constitution and laws” of the United States (Maine v Thiboutot, 448 US 1). It has been held that the discretionary allowance of counsel fees may be appropriate in an action based upon alleged violation of the Federal Social Security Act (such as this action) (see Matter of Fairly v Fahey, 79 AD2d 35; Matter of Holley v Blum, 75 AD2d 998). As the court ruled in Fairly (supra, at p 37), citing Rodriguez v Taylor (569 F2d 1231, 1245, cert den 436 US 913): “‘The award of fees to legal aid offices and other groups furnishing pro bono publico representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities *687 to assist in the enforcement of congressionally favored individual rights.”’
In this action, although this court has denied plaintiffs’ request for class action certification, this denial was premised solely upon the fact that State operations are involved, and therefore under the applicable law of this State, class action is inappropriate. In all other respects, as to the merits of this action, plaintiffs are clearly the “prevailing party” within the purview of the Civil Rights Attorney’s Fees Awards Act (US Code, tit 42, § 1988). Plaintiffs’ attorneys have done an excellent job in preparing well-researched, scholarly briefs, and through their prodding of recalcitrant bureaucrats, have obtained necessary relief to enforce the rights of all residents of adult homes in this State. They have earned the right to be compensated for their herculean efforts.
Accordingly, that branch of the motion which seeks an award of counsel fees is severed and is granted. It is ordered that the issue of the reasonable value of the services rendered (see Bradford v Blum, 507 F Supp 526, 531) is hereby referred to Trial Term, Part 10, for assignment, to hear and report with recommendations. Pending receipt of the report, final determination of that branch of the motion is held in abeyance.
Counsel are directed to file a conformed copy of the order to be settled hereupon with notice of entry with the office of the Referees, Room 308-M, within five days after publication hereof, for the purpose of obtaining a calendar date.