Henry H. BROWN, et al.

v.

The GILLETTE COMPANY

Paul I. LEWIS

v.

The GILLETTE COMPANY

Civ. A. Nos. 75–3017–Z, 77–3455–Z.

United States District Court,
D. Massachusetts.

Feb. 24, 1982.

---

Andrew C. Meyer, Jr., Robert Frank, Jr., Choate, Hall & Stewart, Boston, Mass., for plaintiffs.

Richard L. Neumeier, Parker, Coulter, Daley & White, Boston, Mass., for defendant.

### JUDGMENT

ZOBEL, District Judge.

This matter came on to be heard pursuant to the Order of this Court entered herein, dated August 12, 1981, upon a stipulation of dismissal contained in a Settlement Agreement (hereinafter referred to as the "Settlement"), and upon a Motion for Approval thereof, and due notice of the hearing having been given pursuant to the said Order of this Court, and the moving parties having appeared and been heard through counsel in support, and an opportunity to be heard having been given to all other persons entitled to be heard, and there being no just reason for delay or for not approving said Settlement or for not entering Judgment as prayed, and the matter having been considered by the Court and it appearing that said Settlement should be approved and Judgment entered as prayed; now, therefore, it is hereby ORDERED, ADJUDGED, AND DECREED:

1. The parties have fully complied with Rule 23(e) of the Federal Rules of Civil Procedure and due and adequate notice of this proceeding has been given, and full opportunity to be heard has been afforded, to all parties and persons in interest.

2. The Settlement filed herein is hereby approved and put into effect in a final Judgment in accordance with its terms, which are adjudged to be fair, reasonable, and adequate. The terms of the Settlement are incorporated in this Order by reference and the parties are hereby ordered to consummate and comply with the terms of this Settlement.

3. The Complaints herein are dismissed, with prejudice, in their entirety.

4. The defendant is discharged from any and all claims which have been, or could have been, asserted by, or on behalf of, the plaintiffs, and/or any class or subclass, or any member thereof, in connection with, relating to, or which arose out of, or may arise out of, any of the matters or transactions which were referred to in the complaints or amended complaints or which otherwise form the subject matter of these actions, and this Judgment shall be final and conclusive with respect to any and all such claims.

5. The plaintiff and all members of any class or subclass are hereby severally and perpetually enjoined from instituting or prosecuting any suit or other proceeding in any court against the defendant, except pursuant to the Settlement, based upon any and all claims in connection with, relating to, or which arise out of, or may arise out of, any of the matters or transactions which were referred to in the complaints or amended complaints or which otherwise form the subject matter of these actions, all of which claims are hereby adjudged to be compromised, settled and extinguished by virtue of the proceedings in these actions and this Judgment.

6. This Judgment is intended to be final and appealable as of the date of its entry with respect to all matters addressed herein. To the extent that such a finding is necessary, the Court finds that there is no just reason for delay and directs that this Judgment be entered forthwith.

7. Jurisdiction of these actions is retained by the Court for the purpose of taking any action, including actions to which reference is made in the Settlement, that may be appropriate to give effect to or enforce this Judgment.

8. The Court finds and awards to Choate, Hall & Stewart reasonable attorneys' fees in the amount of $432,181.40 and expenses in the amount of $149,073.27. Further, the Court finds and awards to Lubin & Meyer reasonable attorney's fees in the amount of $18,490.62.

## MEMORANDUM OF DECISION

This motion for attorney's fees represents the final stage in a class action racial employment discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* by present and former employees of the Gillette Company. Before trial, the parties entered into a settlement agreement. However, they were unable to agree on the amount of attorney's fees to be awarded to plaintiffs' attorneys Choate, Hall & Stewart and Andrew C. Meyer, Jr. Counsel presented substantial evidence—affidavits, documents and testimony—bearing on that issue, as well as written and oral argument.

Section 706(k) of Title VII of the Civil Rights Act of 1964 authorizes the allocation of attorney's fees in cases brought under the statute. It provides:

> In any action or proceeding under ... (Title VII) the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs..." 42 U.S.C. § 2000e–5(k).

The purpose of this section is to ensure that injured parties will not be discouraged from seeking judicial redress of their grievances by the fear of incurring large attorney's fees, *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Congress was concerned that unless adequate compensation was provided by the Act, competent attorneys would have little incentive to represent plaintiffs in employment discrimination litigation. *Newman v. Piggie Park Enterprises, Inc., id.; Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719–20 (5th Cir. 1974). However, the statute imposes two requirements—that the attorney's fees be "reasonable" in amount, and that they be awarded only to parties who have "prevailed".

### I. The "Prevailing Party" Issue

■ It is now settled that a party who prevails through a settlement rather than through litigation is equally entitled to attorney's fees as a prevailing party. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65

L.Ed.2d 653 (1980). However, because a settling plaintiff almost invariably does not obtain all the benefits which he set out to gain at the commencement of the litigation, the extent to which he prevailed under the terms of the settlement is often unclear.

The First Circuit addressed this issue specifically in *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978), a class action suit under 42 U.S.C. § 1983.[1] Protective custody inmates at the New Hampshire State Prison alleged that various conditions of their confinement violated the Constitution. After a trial, the district court upheld the prison authorities on some issues and granted relief to the class with respect to others. On the question of law library access, the court found for the inmates. *Nadeau v. Helgemoe*, 423 F.Supp. 1250 (D.N.H.1976). The Court of Appeals affirmed in part and remanded in part. *Nadeau v. Helgemoe*, 561 F.2d 411 (1st Cir. 1977). The District Court's order concerning expanded access to library facilities was affirmed. Before trial on the remanded issues, the parties entered into a consent decree. Although the class had won an increase in library access, there remained considerable debate as to the degree of success the class had achieved with respect to its other claims. The parties also disagreed whether any of the resultant benefits were obtained by virtue of the lawsuit or were the gratuitous concessions of the prison authorities. The district court denied the plaintiffs' request for attorney's

fees, on the ground that they were not "prevailing parties".

On appeal, the plaintiffs argued that they had unquestionably "prevailed" on the issue of library access and that their efforts contributed significantly to the achievements in the consent decree, thereby rendering them sufficiently successful on those issues as well to support an award. In this context the Court of Appeals held that plaintiffs may be considered prevailing parties if "they succeed on any significant issue in litigation which achieves some of the benefit which the parties sought in bringing suit." *Nadeau v. Helgemoe*, 581 F.2d at 278–79. It also stated however, that "[t]he amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful." *Id.* at 279.

Because *Nadeau* suggests that attorney's fees may be awarded only for time spent on those issues on which plaintiffs are deemed to have benefited the class, it appears to require evaluation of each issue in a settlement to determine whether plaintiffs have prevailed with respect to it.[2] But that procedure is applicable only where, as was true in that case, "claims are truly fractionable". *Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979). Often issues are not readily divisible and may be asserted or abandoned as part of a litigation strategy. In such a case a court is not required to engage in an analysis of each

---

1. The standard for fee awards under 42 U.S.C. § 1988 is the same as that under 706(k) of Title VII. *Nadeau v. Helgemoe*, 581 F.2d 275, 278 n.2 (1st Cir. 1978).

2. Read this way, *Nadeau* has caused problems. *Bradford v. Blum*, 507 F.Supp. 526 (S.D.N.Y. 1981) not only went out of its way to distinguish *Nadeau* in a footnote, but criticized the *Nadeau* approach:

 [T]he Court believes that Congress did not intend to fragment the definition of (prevailing party).... There is no question that in the normal course of litigation, especially complex and vigorously contested litigation such as that currently before the Court, each side will win some procedural skirmishes and lose others. *Id.* at 529.

 *See also Northcross v. Board of Education*, 611 F.2d 624, 636 (6th Cir. 1979), *cert. denied*, 447

U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Stenson v. Blum*, 512 F.Supp. 680, 685 (S.D.N.Y.1981).

The Fifth Circuit gave *Nadeau* a narrow reading:

 Because issues may at times be reasonably related, we reject anything in *Nadeau* ... which insists that a district court must always sever an attorney's work into "issue parcels" and then assess that work for purposes of a fee award in terms of the outcome of each issue standing alone. *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir. 1980).

That court did note, however, that "[a]pportionment of attorney's fee is appropriate when the plaintiff has brought several distinct causes of action, only some of which were successful." *Id.* at 349 n.3.

finite issue in a settlement agreement arising out of one cause of action. Rather, it must evaluate whether plaintiffs "have achieved some substantial part of the benefit they sought" from the lawsuit, that is, whether "the basic objectives they sought from the lawsuit have been achieved, or at least furthered in some significant way". *Coyote v. Roberts*, 502 F.Supp. 1342, 1346 (D.R.I.1980).

■ Once it has been determined that plaintiffs have substantially benefited from having brought the lawsuit, under *Nadeau* the evaluation proceeds along two lines. First, the court must make a factual determination whether a causal connection exists between the defendants' undertaking as outlined in the settlement agreement and the bringing of the suit. Was the suit "completely superfluous in achieving the improvements undertaken by defendants on plaintiff's behalf", or was it a "necessary and important factor in achieving the improvements." *Nadeau, supra*, at 281. Stated another way, was the lawsuit a "catalyst", even if not the sole or primary cause of defendant's decision to settle? *United Handicapped Federation v. Andre*, 622 F.2d 342, 346–47 (8th Cir. 1980). That determination depends in important part on the chronological sequence of events, especially "where the evidence relevant to the causes of defendant's behavior is under defendant's control and not easily available to plaintiff." *Nadeau*, at 281.

The second inquiry prescribed by *Nadeau* is a legal one.

> If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense. *Id.* at 281.

Lest that test require the district court to engage in the very trial on the merits which the consent decree attempted to avoid, it translates into a determination "whether if plaintiffs had continued to press their claims . . . . their action could be considered 'frivolous, unreasonable, or groundless' ". *Id.* (citation omitted).

A § 1983 action challenging the constitutionality of a criminal statute, *Coyote v. Roberts, supra*, further elucidates. Although amendments to the statute in suit passed subsequent to the filing of the action rendered the case moot, plaintiffs nevertheless sought attorney's fees on the theory that their efforts had been at least partially responsible for the changes in the legislation. Refusing to "[d]elv[e] too deeply into the actual merits of the claim", since to do so "could enmesh a court in the very trial that extra-judicial resolution of the case had rendered unnecessary" (*id.* at 1349), the court viewed the inquiry as "akin to the threshold evaluation of whether a purported . . . . claim is substantial enough to confer subject matter jurisdiction on the federal court". *Id.* at 1350. "[T]he fact that the court might have ultimately rejected all or part of the plaintiff's claim does not bar a fee award so long as the claim has at least colorable merit when analyzed in light of established constitutional theory." *Id.*[3] Thus *Nadeau* requires merely that a court weed out groundless nuisance-type suits. It does not require a court to engage in an in-depth contemplation of the merits.

It remains to apply these standards to the instant case. The issue-parceling suggested by the court in *Nadeau* is not applicable here as all of the issues are factually intertwined. The plaintiff class, black employees and former employees of Gillette, alleged that Gillette had discriminated against them because of race and sought relief under Title VII. Their complaint was, in essence, one cause of action. In the course of the litigation, certain approaches appeared more attractive than others and certain claims were abandoned. Because of

---

**3.** *See also Keith v. Volpe*, 501 F.Supp. 403, 412 (C.D.Calif.1980) (defendant was not acting gratuitously if plaintiff's claims were not frivolous, unreasonable or groundless and would "most likely support some form of permanent relief");

*United Handicapped Federation v. Andre, supra*, at 347, ("[n]or is it necessary or practical for the plaintiffs to prove that their rights were in fact violated under traditional standards of analysis", citing *Nadeau* ).

the wide range of relevant evidence in an employment discrimination suit admissible as adding "color" to a defendant's decision-making process (*see Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106, 113 (1st Cir. 1979)) plaintiff properly pursued a number of issues. However, each issue was not separable from the complaint of discrimination nor did it represent a distinct claim. Therefore, in order to determine whether plaintiffs "prevailed", one must look at the settlement agreement as a whole, rather than attempt to analyze each finite provision.

Plaintiffs have clearly benefited from the settlement agreement. Despite Gillette's repeated contention that it has merely "agreed to do in the future what it has been doing in the past", the facts do not support this position. Under the settlement agreement an arbitration procedure has been established to adjudicate specific claims by class members of past discrimination with respect to both promotions and termination and to award damages. This did not exist prior to the suit. The settlement agreement also provides for several affirmative action programs: Gillette will expand job posting for exempt positions; it will maintain records of promotion at certain higher levels; it will provide written explanatory statements to unsuccessful job bidders; it will establish an employee complaint procedure; it will provide and publicize training opportunities; and it will evaluate managers on the basis of their equal opportunity performance.

Nor may Gillette argue that plaintiffs do not satisfy the two-tier test of *Nadeau*. There can be no question of the causal connection between the initiation of the lawsuit and the attainment of the benefits under the settlement. At the very least, the lawsuit acted as a catalyst in achieving the results obtained by the settlement.

Similarly, Gillette is not acting gratuitously in a legal sense. Without now deciding the merits of plaintiffs' prima facie case of employment discrimination at Gillette, I find that plaintiffs had a colorable claim and did not simply gain gratuitous conces-

sions from the defendant. Gillette does not contend that this was a nuisance suit. Rather, it emphasizes the efforts which it made during the time subsequent to the filing of the suit to establish affirmative action programs on its own. The good faith of those efforts, in the face of both legal affirmative action requirements and a Title VII law suit, is of no significance. *Nadeau, supra*, at 280.

■ I am satisfied that there is a causal connection between the bringing of the suit and the benefits attained. I am also satisfied that plaintiffs' legal claims were not groundless. Because plaintiffs are "prevailing" parties, they are entitled to reasonable attorney's fees.

### II. The Reasonable Amount Issue

The statute confers discretion upon the court, limiting this discretion only by the requirement that such fees be reasonable. In *Furtado v. Bishop*, 635 F.2d 915 (1st Cir. 1980) the First Circuit established guidelines to be considered in arriving at a reasonable figure. Noting favorably the Third Circuit's approach in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973) and *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir. 1976) (en banc) (*Lindy II*), as endorsed and applied in *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc), the court adopted what has become known as the "lodestar" method. This method requires first, the calculation of a "lodestar" —the number of hours reasonably expended multiplied by a reasonable hourly rate. This figure is then adjusted upward or downward "to reflect the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment, quality of representation (i.e. an unusually good or poor performance above or below the skill already reflected in the hourly rates), exceptional (and unexpected) results obtained, etc." *Furtado v. Bishop, supra*, at 920.

Accordingly, I resolve first the number of hours which counsel may reasonably charge and the appropriate hourly fee. Thereafter

I consider other less objective factors to arrive at the final fee amount.

### III. The Fee

#### A. Choate, Hall & Stewart

##### 1. Hourly Rate

The time charges which have been submitted to the court reflect actual historical rates. The table below represents the range of hourly rates charged by the attorneys who performed the most substantial work on the two cases during the time they were involved.

| | |
|---|---|
| Robert S. Frank, Jr. | $65–135 |
| Jarvis P. Kellogg | 35–80 |
| Wm. Gerald McElroy, Jr. | 40–75 |
| Richard F. Welch, III | 45–70 |
| Roslyn G. Daum | 40–85 |

Some courts have focused on the discrepancy between a fee based on historical rates, as here, and fees based on current rates. See Chrapliwy v. Uniroyal, Inc., 509 F.Supp. 442, 457–58 (N.D.Ind.1981). This difference may be substantial where, as in the instant case, litigation has continued over a significant period of time during which hourly rates have escalated dramatically. On the other hand, because historical rates were based on costs of overhead and services paid for at the time, too great a compensation for the delay factor might result in a windfall for plaintiffs. Chrapliwy, supra, at 458. These issues are among the subjective factors which I consider in a later section of this opinion.

Gillette does not seriously challenge the reasonableness of these hourly rates, but it suggests that the named lawyers were not experienced in employment discrimination law and should, therefore, have charged less in this case. As to some that assertion is unfounded, as to all it is irrelevant. This was a matter in litigation and the experience called for was primarily that of an advocate. That experience plaintiffs' counsel clearly brought to the case. I accept the average hourly rates as reasonable.

##### 2. Number of Hours

In addition to affidavits, Choate, Hall & Stewart has submitted computer printouts reflecting time expended and the amount charged, based on historical hourly rates. These time charges and affidavits reflect a total of 9874.25 hours expended by attorneys and paralegals on the two consolidated cases Brown v. Gillette Co. and Lewis v. Gillette Co., from 1975 to November 6, 1981. This represents $556,462.25 in fees. In addition, Andrew C. Meyer, the original attorney in the two cases, has requested a fee award of $57,762.50 for 647.25 hours.[4]

This case required a large amount of data compilation and statistical analysis, but with the exception of the motion for class certification, it did not involve complicated legal problems. Although the time spent seems to be high for a case settled before trial, the litigation was protracted and hard fought on both sides. Where an excessive number of hours appears to have been spent, plaintiffs must not be penalized for defendant's contentious litigation strategy which may ultimately inflate the time spent on a case. Copeland v. Marshall, supra, at 904. In this case, moreover, plaintiffs were often outmanned by an impressive team of defense lawyers.

On the other hand, when a defendant is asked to pay plaintiff's fees, no client relationship exists and the defendant has no control over the fee request. Furthermore, because "billing judgment" is an important component in setting the fees charged clients, it is equally important when a court is expected to set a fee amount. Copeland, supra, at 891. "Hours that are not properly billed to one's client also are not properly billed to one's adversary . . . ." Id. See

---

4. There is a discrepancy of .25 hours in the number of hours for which Mr. Meyer has requested a fee. In his typewritten time records he requests 215 hours for 1976 whereas in his calculations for the total amounts over the seven-year period he lists 215.25 hours for 1976. Because the correct number of hours for that year should have been 215.25, I treat the total amount of hours as 647.25 rather than 647.

*also Furtado v. Bishop, supra,* at 923–24 n. 16 ("we would have preferred a convincing demonstration of 'billing judgment' illustrating that plaintiffs themselves initially had separated the 'hard' hours from the 'soft'). Therefore, the exercise of billing judgment becomes the court's responsibility.

The court is charged with carefully scrutinizing an attorney's time records to avoid excessive fees. *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Not only must attorneys provide a full and specific accounting of their time, but "bills which simply list a certain number of hours and lack such important specifics as dates and the nature of the work performed during the hour or hours in question should be refused." *Id.* Similarly, time "beyond that consistent with a standard of reasonable efficiency and productivity should be eliminated." *Furtado v. Bishop, supra,* at 920. Time records should be reviewed to avoid duplication of effort. *See Furtado v. Bishop, supra* (reduction of hours spent preparing an appellate brief by one-half to avoid "possible duplication of effort and diseconomies of committee authorship that may occur in a case where there is no demonstration to the contrary.") *See also Bradford v. Blum,* 507 F.Supp. 526 (S.D.N.Y.1981) (a one-third reduction in hours for duplication of effort, and excessive time spent in inter-attorney conferences); *Suzuki v. Yuen,* 507 F.Supp. 819 (D.Hawaii 1981) (reduction of hours by two-thirds for "unreasonably high" number of hours spent on brief preparation and judgment of court that work could have been done by lower paid associates and/or law clerks).

Beyond generally considering accuracy in record keeping and efficiency in performance, the court must evaluate different types of work performed by the attorneys, distinguishing between:

legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. *King v. Greenblatt, supra,* at 1027. (citation omitted)

While such an evaluation ideally proceeds on the basis of a detailed analysis of each item of recorded time, such is usually not practicable, or even possible, and an across-the-board reduction of hours claimed has to suffice. *See, Bradford v. Blum, supra,* at 534; *Northcross v. Board of Education, supra,* at 636–37, 640–41. *See also, Copeland, supra,* at 903 (the District Court, recognizing that some duplication or waste of effort had occurred, "did not err in simply reducing the proposed 'lodestar' fee by a reasonable amount without performing an item-by-item accounting").

With these considerations in mind, I address the difficult task of assigning a reasonable number of hours to plaintiff's fee request. As I am required to do, I have examined the time records in great detail.

A number of entries refer to matters which are unrelated to either of the two consolidated discrimination cases. Matters pertaining to trusts, wills, blue sky, divorce, and legislative matters have been billed erroneously to the Gillette cases and I eliminate them and the respective dollar amount requested for them.[5] I also eliminate hours devoted to workman's compensation as having been unrelated to the two Gillette cases. Similarly, under *King,* I eliminate any hours which contain no reference to the specific tasks performed. 1.25 hours coded "complaint" a full year after the complaint was filed, have been incorrectly billed and I subtract those hours.[6]

---

5. Occasionally these matters have been lumped with time legitimately spent on the case. Therefore, because I have been unable to separate those hours from those incorrectly billed, I have eliminated the entire entry. *King v. Greenblatt, supra,* at 1027.

6. However, I will not eliminate time coded incorrectly as "Mass. Estate Tax". I find that this time was, as represented, miscoded as "meeting". I reach a similar conclusion with respect to time coded as "Execute". I find that this time was spent as "expert" time.

I therefore reduce the time claimed by: 42.5 hours ($3,235.00) unrelated to the *Gillette* cases; 194.5 hours ($13,000.50) unsupported by specifics as to work performed.[7] That leaves a total of 9,637.25 hours with a total value of $540,226.75.

In exercising billing judgment as I review the time charges, I find that an excessive number of hours have been spent. Without doubt this case was difficult to manage. In addition to the legal work involved, a tremendous amount of time was necessarily spent compiling information and converting it into a usable form. Plaintiffs properly hired statistical experts, enlisted computer assistance, and utilized paralegals. Although the cost of the paralegals might be viewed as part of the firm overhead, contributing to the high hourly rate, I have not deducted it from the hours properly billed to the case, since, were attorneys to perform those tasks, it is likely that the fee would be even greater. However, despite the utilization of paralegals, a large amount of attorney time was spent on tasks which might have been more efficiently delegated to a less expensive paralegal.[8]

Furthermore, a great deal of time appears to have been spent in an inefficient manner. For example, according to affidavits filed with the court, at least 1,069.5

hours were spent on experts. These hours included a trip to attend a seminar in Washington, the full cost of which is requested. Two experts were eventually hired. Even assuming that in the course of locating two appropriate experts a great deal of time will be spent researching and talking to persons who might not eventually be hired, I find the hours spent on this aspect of the case unreasonably high. Similarly, no less than 235 hours were expended on intra-office meetings.[9] That number evidences unproductive hours and inefficient expenditure of time and is unreasonably high.

Therefore, because I find the hours spent to be excessive I reduce them and the total monetary value for those hours by one-third. This results in a "lodestar" figure of $360,151.17.

### 3. Subjective Factors
### Quality of Representation

■ Any adjustment to the lodestar based on quality of representation is

appropriate only when the representation is unusually good or bad, *taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the "lodestar." *Copeland, supra,* at 893.

---

While I am mindful of the fact that some inadvertently incorrect coding is to be expected in a case of this magnitude, I am troubled by the extent of it. No less than 109 hours were incorrectly coded as Mass. Estate Tax. While I credit testimony to the effect that this was properly time spent in "meetings", I note that, read as represented, a number of these time charges read "meeting return", "meeting telephone", and "meeting research". This carelessness, though understandable, is not to be commended. I am also troubled by what appears to have been duplicate charging. Because two cases were consolidated, two separate time records were maintained. A number of entries appear to have been charged to both cases. For example, in reviewing the time charges spent on "research memorandum re fees" I note that on a number of days in September 1981 identical charges were made to both accounts. The explanation given was that the attorney generally splits the charges between the two cases. However, with respect to a number of entries the time is not split, but differs by less than an hour. For example one account was charged two hours for "travel

research visit Andover plt, discovery" on January 25, 1979. The other was charged 2¼ on the same date. Although I credit the testimony, that the attorney split his time in this manner, I find it troubling.

7. In making these reductions, I subtract the amount of time spent by the attorney on the matter and, commensurately, the amount charged for the service, based on the attorney's hourly rate at the time the service was performed.

8. By way of example, although significant proofreading was conducted by paralegals, at least 44 hours were spent by attorneys performing proofreading functions.

9. This figure represents only time clearly devoted to "meeting with firm attorney", coded as MF on the time charts. Because entries frequently do not distinguish different types of work, combined hours are excluded from this figure, which is extremely conservative.

See also *Lindy, II*, 540 F.2d at 118 ("district court may determine that the lawyer discharged the professional burden undertaken with a degree of skill above or below that expected for lawyers of the caliber reflected in the hourly rates.")

However, Mr. Frank particularly, and his associates at Choate, Hall & Stewart have performed most diligently and competently since they took over this litigation. They have represented the plaintiff class with commendable zeal and skill. Mr. Frank's oral argument on the motion for class certification and at numerous discovery and other pretrial matters was always of superior quality—well organized and lucid, and often persuasive. His understanding of the facts and his command of the law were impressive. This in no way derogates the representation of Gillette which was conducted by experienced counsel with spirit and determination. The defense throughout these proceedings tested and proved the skills of plaintiffs' attorneys. To some extent these qualities are reflected in the high hourly rate. But because I find that Mr. Frank's representation of plaintiffs was of superior quality, an addition to the lodestar is appropriate.

*Results Obtained*

 A supplement may be awarded where the results are exceptional, *Copeland, supra*, at 894. That is, among the factors to be considered in granting fee awards are the "amount involved and the results obtained". *King v. Greenblatt, supra*, at 1027. Such an increase is not to be granted routinely, however. *Copeland, supra*, at 894.

 In this case, the settlement reflects no unusual results. Whatever damages will be awarded are as yet undetermined. There is, moreover, a strong possibility that Choate, Hall & Stewart attorneys will represent a number of the plaintiffs in the arbitration proceedings dictated by the settlement agreement and may receive additional awards based on plaintiffs' recovery in those proceedings. The possibility of further professional contact is another factor to be considered. *King v. Greenblatt,*

*supra*, at 1027. Therefore, I decline to raise the lodestar based on the results obtained.

*Contingency*

 When attorneys undertake to represent plaintiffs in Title VII cases, they do so without any certainty that the time they spend on the case will be compensated ultimately. This risk of non-recovery, or contingency factor, has prompted courts to consider supplementing the lodestar as a means of encouraging plaintiffs' attorneys and compensating them for the risk assumed in these cases. *Copeland, supra*, at 892–93. *See, e.g. Lamphere v. Brown University, supra*, at 47 (10% supplement). The contingency factor may be large or small depending on the nature of a case and may decline as litigation proceeds and the merits of the case become apparent to the parties. However, where the hourly rate itself comprehends a contingency allowance, no contingency adjustment should be made. *Copeland, supra*, at 893.

Choate, Hall & Stewart charged its historic hourly rates. These rates, normally charged to regular corporate clients of the firm, do not incorporate a contingency adjustment. While the litigation was at no point unusually risky, especially after Gillette's December 24, 1980 settlement offer, there was even then no certainty that fees would be recovered. For that reason, and because of the strong public interest in encouraging competent attorneys like Choate, Hall & Stewart to undertake litigation of this nature, I conclude that an adjustment to reflect the contingency factor is appropriate. However, because the risk of non-recovery was non-existent subsequent to the August 31 settlement, no contingency supplement may be added for those hours.

*Delay in Payment*

 In addition to the risk of non-recovery, the element of delay in payment must be considered where historical rates are used. Choate, Hall & Stewart has received no compensation for this case for six years. This delay has deprived the firm of the use of money for that time, a particularly sig-

nificant factor in an inflationary period. *Copeland, supra,* at 893. Therefore, a percentage adjustment to reflect the delay in payment is proper.

*Summary*

█ It is impracticable to break down the lodestar amount for the period prior to August 31, 1981 and again for the period from December 24, 1980 or to assign specific figures for the sliding effect of the contingency factor during the course of litigation. Accordingly, I supplement the lodestar of $360,151.17 by a total of 20 percent —$72,030.23—in recognition of the superior quality of the representation by Mr. Frank, to take account of the contingency factor, and to provide some recompense for the delay in payment. I award Choate, Hall & Stewart a fee of $432,181.40.

### B. Andrew C. Meyer, Jr.

Andrew C. Meyer was the original attorney for the named plaintiffs. He initially investigated their assertions, prepared and filed the complaints, and conducted early discovery in the case. He recognized soon after commencement of the action, when settlement negotiations on behalf of the named plaintiffs proved unsuccessful and Gillette began to press with substantial discovery requests, that his office did not have adequate manpower for the case. He properly and carefully sought assistance, engaged Choate, Hall & Stewart and ultimately turned over to that firm the prosecution of the litigation. His role during the interregnum was that of liaison between the named plaintiffs and new counsel. He did not thereafter actively participate in the case until the settlement negotiations in the summer of 1981 when Mr. Frank kept him advised of the progress of the discussions.

█ Mr. Meyer's time reports are presented in the form of affidavits and typewritten pages describing time spent. His testimony reveals that his time records have been compiled from his Lawyer's Diary and notations made on the documents at the time work was performed. Although this method of keeping time records is not commendable, I credit Mr. Meyer with having reasonably accurately reconstructed the hours spent. I also credit Mr. Meyer's affidavit with respect to his hourly rates, which ranged from $50 in 1975 to $125 in 1981. However, I am not satisfied that Mr. Meyer's time was reasonably expended in this case. Although I grant him his requested fee award of $5,400.00 for 1975, the time spent on the case subsequent to November, 1975, when Choate, Hall & Stewart filed its appearance, was excessive. Because Choate, Hall & Stewart's attorneys were handling the bulk of the substantive litigation through this period, I find Mr. Meyer's work to have been duplicative. At least three-fourths of his time during this period was expended in "communication", "conference" and "meeting", preparing for and attending depositions and hearings also attended by Choate, Hall & Stewart lawyers, and "reviewing" work done by Choate, Hall & Stewart. Because it is impossible to determine exactly what hours were productively expended by Mr. Meyer in his consulting role during the years 1976–81, I will reduce his hours and fee for those years by 75 percent. Therefore, I reach a lodestar of $18,490.62. Because I do not deem any supplement to be appropriate, I award Mr. Meyer a fee of $18,490.62.

### C. Costs & Disbursements

█ Choate, Hall & Stewart requests $149,772.27 for costs and disbursements. $99,770.00 of this was expended on computer and statistical experts and $22,826.03 for the services of a labor economist. In addition, it requests $424 for Mr. Kellogg's trip to attend a seminar in Washington for the purpose of locating experts and $275 as a registration expense. Because I do not consider the latter two items to be properly billed to a client, I eliminate them. However, I deem the other expenses to be appropriate and award Choate, Hall & Stewart $149,073.27 in expenses.

For the reasons stated, judgment may be entered awarding Choate, Hall & Stewart a fee of $432,181.40 and disbursements of

$149,073.27 for a total of $581,234.67 and Andrew C. Meyer a fee of $18,490.62.