**HERITAGE HOMES OF ATTLEBORO, INC., Plaintiff,**

v.

**The SEEKONK WATER DISTRICT, Defendant.**

**Civ. A. No. 77–1251–C.**

United States District Court, D. Massachusetts.

Sept. 30, 1982.

**168**

Michael J. Duggan, Stephen D. Clapp, Armstrong, Pollis & Clapp, North Attleboro, Mass., for plaintiff.

William E. Hicker, Quincy, Mass., John J. Graham, Boston, Mass, for Seekonk Water Dist.

Alvin Jack Sims, Brockton, Mass., for Barbara R. Mann.

Larry Kenna, Lawrence B. Litwak, Choate, Hall & Stewart, John A. Nadas, Choate, Hall & Stewart, Boston, Mass., for defendants Devine and Tortolani.

## MEMORANDUM

CAFFREY, Chief Judge.

This matter is before the Court on a motion for attorney's fees and costs which is the final stage in a racial discrimination suit in which final judgment has been entered for the plaintiff Heritage Homes of Attleboro, Inc. for compensatory damages in the amount of $43,610.44 plus interest for a total judgment of $57,700.08. Pursuant to the Civil Rights Attorney's Fees Award Act of October 19, 1976, Pub.L.No. 94–559, § 2, 90 Stat. 2641, *amending* 42 U.S.C. § 1988 (1970), the plaintiff now seeks the award of reasonable attorney's fees in addition to costs and disbursements. In providing for the award of attorney's fees Congress has recognized that civil rights laws, to a large degree, are privately enforced and that such awards are essential if private citizens are to have a meaningful opportunity to vindicate the important policies

which those laws embody.* The Fees Act provides in pertinent part that:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title . . . the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

 Because the plaintiffs were the prevailing party, they are entitled to reasonable attorney's fees. The Court of Appeals for the First Circuit has established certain guidelines which are to be considered by the Court in arriving at a reasonable figure. In *Furtado v. Bishop,* 635 F.2d 915 (1st Cir. 1980) the First Circuit adopted the "lodestar" method of fee calculation. Under this approach there are two principal steps involved in computing the award of fees. First, a "lodestar" fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. This figure is then adjusted upward or downward to reflect factors such as "the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment, quality of representation (*i.e.* an unusually good or poor performance above or below the skill already reflected in the hourly rates), exceptional (and unexpected) results obtained, etc.," which are shown to warrant the adjustment by the party proposing it. *Furtado v. Bishop, supra* at 920. *See Copeland v. Marshall,* 641 F.2d 880, 890–91, 892 (D.C.Cir.1980) (en banc).

Accordingly, the Court is to determine the number of hours which counsel may reasonably charge and the appropriate fee. Thereafter, in the second step, the Court is to consider the more subjective factors in arriving at the final fee award.

Plaintiff's counsel has submitted to the Court a detailed request for fees, listing time spent on the case and suggesting certain hourly rates. Defendant has taken exception to both the proposed hourly rate charges, as well as certain hours billed by counsel. This Court has the authority and responsibility both to make appropriate adjustment to the hourly rate, and also to modify the number of billable hours. *Miles v. Sampson,* 675 F.2d 5 (1st Cir. 1982).

I. *Hourly Rate*

The time charges submitted to the Court do not accurately reflect the historical rates charged by plaintiffs counsel, Mr. Clapp, during the course of this litigation. While Mr. Clapp requests that he be compensated at the rate of $80 per hour for all work performed during the 5 years of this case, he admits that his hourly fee during the years 1977 through 1979 was $60 per hour, that it increased to $75 per hour in 1980, and then to $80 in 1981. Mr. Clapp offers the contingency nature of the fee arrangement as justification for the admittedly inflated rate claims. However, while the contingent fee arrangement is a factor that this Court should not, and does not ignore, it is not to be accepted at face value in this initial calculation of the lodestar figure.

II. *Number of Hours*

Plaintiff's counsel has also submitted a detailed accounting of the hours expended on this case during the District Court and Court of Appeals phases of this litigation. Plaintiff has not applied for any compensation for hours expended in the Supreme Court proceedings.

 Defendants have filed 12 specific objections to plaintiffs time charges. The crux of many of defendant's challenges is that certain hours expended on complaints and procedural tactics that ultimately failed should not be charged against the defendant. While it is true that "[t]he amount of attorney's fees they [the prevailing parties] receive should be based on the work performed on the issues in which they were successful," *Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir. 1978), the Court need not examine each and every issue or complaint in terms of hours expended on each discrete area. Such a procedure is applicable only where the "claims are truly fractionable"

---

* See S.Rep.No. 94-1011, 94th Cong., 2nd Sess. 2 (1976) reprinted in 5 *U.S.Code Cong. Admin. News,* 5908 *et seq.*

*Lamphere v. Brown University,* 610 F.2d 46, 47 (1st Cir. 1979). However, in a case such as this, the Court must determine whether plaintiffs "have achieved some substantial part of the benefits they sought." *Coyote v. Roberts,* 502 F.Supp. 1342, 1346 (D.R.I. 1980); *see also Brown v. Gillette Co.,* 536 F.Supp. 113 (D.Mass.1982). Notwithstanding the fact that plaintiffs lost several procedural and substantive skirmishes, they ultimately prevailed, and, in light of one of the major purposes of the Fees Act, to encourage competent counsel to diligently pursue claims, plaintiff's counsel should not be denied compensation merely because not all related legal theories or procedural contests were successful. To use such a fragmentary approach in computing a reasonable fee would have the untoward affect of discouraging would-be plaintiffs and counsel alike from pursuing complex and vigorously contested litigation.

In the present matter plaintiff has made a good faith effort to exclude hours worked which clearly did not contribute to the final judgment, such as the above-mentioned Supreme Court proceedings, as well as the time devoted to the opposition of the individual defendant's motions for attorney's fees.

As to challenges relating to the billed hours, after close examination of all memoranda, I find that objections numbered 2a and 8 are well taken. Therefore, for the purpose of calculating the initial "lodestar" figure, I will disallow the hours devoted to dropping the individual defendants from the suit. A total of 3½ hours; .25 hours on 1/26/79; 3 hours on 3/5/79; and .25 hours on 5/14/79 were spent on those matters. Regarding objection 8, plaintiff spent a total of 12.25 hours analyzing newspaper clippings (compiled by a $5 per hour assistant) which provided helpful information concerning defendant's discriminatory activities. I find that a 6 hour inspection should have been adequate, or perhaps that a less trained individual could have undertaken the task, and I therefore reduced the billable hours for that task to 6.25.

■ Defendants have also objected to time billed for contacts with the United States Department of Justice, and for time devoted to contacts with the National Home Builders Association. Plaintiff contends, with good reason, that such contacts, which at first seem not to be "hard" billable hours, did provide fruitful information and aid to plaintiff, and that this was information which, in all likelihood, he would have had to acquire through more expensive means had the contacts not been made. Therefore I will allow the hours so charged.

■ Taking the above-mentioned factors into account, and otherwise using the figures proffered by plaintiff's attorney, the "lodestar" figure is calculated as follows:

| | Hours | Rate | Total |
|------|---------|------|-------------|
| 1977 | 23 | 60 | $ 1,380.00 |
| 1978 | 67.75 | 60 | $ 4,065.00 |
| 1979 | 67.5 | 60 | $ 4,050.00 |
| 1980 | 363.00 | 75 | $27,225.00 |
| 1981 | 67.75 | 80 | $ 5,240.00 |

This results in a lodestar figure of $41,960.00.

The second step of the *Furtado* method involves the adjustment of the "lodestar" figure. As noted above, the "lodestar" is adjusted upward or downward to reflect factors which have not already been taken into account in the original computation, and which are shown to warrant adjustment by the party proposing the adjustment. *Miles v. Sampson, supra* at 8. Both parties in the present case contend that modifications should be made on the initial figure.

Defendants claim that the lodestar should be reduced because plaintiff ultimately prevailed on only two of the six counts, and that only compensatory rather than punitive damages were awarded. Defendants wrongly assert that *Sweeney v. Board of Trustees of Keene State College,* 569 F.2d 169 (1st Cir. 1978) *requires* that a party who partially prevails be subject to a proportionate reduction of award. However, *Sweeney* stands for the proposition that a partial award of fees is properly within the discretion of the trial judge. In the present case the court finds that the lodestar figure should not be so reduced. As discussed above, that plaintiff did not prevail on all

theories should not necessarily lessen the compensation to counsel; in many cases, such as the case at hand, the plaintiffs have achieved the benefits sought, and to deny full compensation for all time reasonably expended on the case would undermine the important policies that underlie the Fees Act.

Defendants further contend that § 1988 does not provide for shifting attorney's fees when "only the private corporate plaintiff is benefited." Defendant's assertion is without merit: first, it is clear that this case not only benefits the plaintiff, but, in addition, and not incidentally, the other identifiable groups of citizen's whose rights are also protected; furthermore, even if we were to assume *arguendo* that only the corporate plaintiff benefitted from the decision, there would still be ample precedent for shifting fees. *Furtado v. Bishop, supra* at 919; *Zarcone v. Perry,* 581 F.2d 1039, 1042 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38.

I now turn to plaintiff's request for additions to the "lodestar". Plaintiff asks that the Court adjust the original figure upwards to reflect both the contingent nature of the fee arrangement as well as the delay in payment. In the computation of the lodestar figure I used plaintiff's historical rates during each of the relevant years, rejecting plaintiff's request for a flat $80 per hour fee to reflect the contingency factor. Having used those lower rates in earlier calculations, I now conclude that a 10% supplement to reflect the contingency factor is appropriate.

Plaintiff's counsel has yet to receive any compensation for his considerable efforts during the 5 years of litigation. Counsel has been deprived of the use of the money for that time, a fact which cannot be dismissed in light of the high interest rates during the period. The rate of inflation has varied during the past five years and it is impractical to precisely calculate the cumulative effect of the inflation on the value of each years output. Therefore, having in mind that a major portion of the lodestar is derived from services performed in 1980, I conclude that a further 15% supplement is appropriate to reflect the delay in payment.

*Summary*

The "lodestar" figure of $41,960 is to be increased to $53,079.40. A summary of the final attorney's fees and costs is as follows:

| | | |
|---|---|---|
| 1. | Lodestar | $ 41,960.00 |
| 2. | Addition to Lodestar | $ 11,119.40 |
| 3. | Costs Advanced in First Fee Application | $ 4,597.69 |
| 4. | Costs Advanced included in Second Fee Application | $ 640.40 |
| 5. | Costs Taxed by Court of Appeals on 6/30/81 | $ 1,074.15 |
| | TOTAL | $ 59,391.64 |
| 6. | Less Costs Taxed Against Heritage by Supreme Court | $ (200.00) |
| | TOTAL FEES AND COSTS | $ 59,191.64 |

For the reasons stated above judgment should be entered awarding plaintiff's attorney $59,191.64.